# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

Civil Case No. 09-CV-00588-JLK-CBS

GRYPHON HOLDINGS, LLC dba
GRYPHON AIRLINES,

      Plaintiff,

vs.

F. MAXEY CLONINGER, III,

      Defendant.

---

## STIPULATED ORDER OF DISMISSAL

---

The parties to this action, by and through counsel, hereby agree that this case has been settled and that all issues and controversies have been resolved to their mutual satisfaction. The parties request the Court to retain jurisdiction to enforce the terms of their settlement agreement under the authority of Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 381-82 (1994).

DATED:

SPECTOR & BENNETT
A Professional Corporation

Ross A. Spector, Esq.
Attorneys for Plaintiff Gryphon Holdings, LLC dba
Gryphon Airlines

DATED:

WARNER, SMITH & HARRIS, PLC

Matthew C. Carter, Esq.
Attorneys for Defendant F. Maxey Cloninger, III

IT IS HEREBY ORDERED:

1.    The parties shall comply with the terms of their Settlement Agreement and Mutual Release entered into on June 26th 2009, a copy of which is attached hereto and incorporated by reference as if fully set forth.

2.    By consent of the parties, the Court shall retain jurisdiction for the purpose of enforcing the terms of the Settlement Agreement and Mutual Release.

//

//

STIPULATED ORDER OF DISMISSAL                                                    2

3.     Except as provided for in paragraphs 1 and 2 above, this case is dismissed, with

prejudice, with each party shall bearing their own attorney's fees and costs.

**IT IS SO ORDERED**  this _10_ day of July, 2009.

John L. Kane
United States District Judge

**STIPULATED ORDER OF DISMISSAL**                                             3

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release is entered into by and between GRYPHON HOLDINGS LLC dba GRYPHON AIRLINES ("Gryphon") and RIVERS TRANSPORTATION GROUP, LLC ("RTG"), on the one hand; and F. MAXEY CLONINGER, III ("Cloninger"), on the other hand; effective as of June 8, 2009. Gryphon and RTG shall hereinafter collectively be referred to as "GR".

### RECITALS

WHEREAS, Cloninger is a former employee of Gryphon;

WHEREAS, GR and Cloninger desire to fully and finally resolve any and all disputes which have arisen between them; and

WHEREAS, GR and Cloninger desire to settle the disputes between them without resorting to continued litigation now or further litigation in the future, including, but not limited to, a settlement of the disputes asserted in case number 002-QB6-SCW of the American Arbitration Association, case number 09-CV-00588-JLK-CBS of the United States District Court for the District of Colorado and case number 09-2037 of the United States District Court for the Western District of Arkansas (collectively the "Actions").

### AGREEMENT

NOW, THEREFORE, in consideration of the promises contained in this Settlement Agreement and Mutual Release, and for other good and valuable consideration, the adequacy of which is hereby acknowledged, the parties hereto hereby agree as follows:

//

//

1.    **SETTLEMENT TERMS**

    A.    **Confidentiality Of Gryphon's Confidential And Proprietary Information**

During the course of his employment with Gryphon, and as a result of this litigation with Gryphon, Cloninger has received certain confidential and proprietary information concerning Gryphon's business operations. "Confidential and proprietary information" includes non-public statements, written or recorded materials, and information in any other form which discusses or in any way refers to Gryphon's business operations.

Cloninger represents and warrants that he has not disclosed any of Gryphon's confidential and proprietary information to any third-party, other than to his attorneys.

Cloninger agrees that Gryphon's confidential and proprietary information shall be kept confidential and proprietary.

Cloninger agrees that he will immediately return all of Gryphon's personal property in his possession, custody, or control, including all computer hardware such as data storage devices and all computers he used while working in Kuwait. Cloninger further agrees to, within seven business days after the full execution of this Settlement Agreement and Mutual Release, remove all of Gryphon's files and information from any computer hardware in Cloninger's possession, custody or control that is not returned to Gryphon, and place it on CD-R discs or thumb drives, and forward it to Ms. Ann Kough c/o Mr. Rick Whipple, Whipple, Wood & Associates, PC, 11852 Shaffer Drive, Building B, Littleton, CO 80127.

//

//

Cloninger agrees that he will immediately and permanently destroy any remaining Gryphon confidential and proprietary information in his possession, custody or control after it is copied and forwarded to Gryphon.

Cloninger represents and warrants that his associates, representatives and agents will promptly destroy all copies, transcripts, notes, and extracts containing Gryphon's confidential and proprietary information that is in their possession, custody, or control. Cloninger further represents and warrants that none of his associates, representatives, agents, and/or attorneys have disclosed Gryphon's confidential and proprietary information to anyone.

Cloninger agrees that he will not use any of Gryphon's confidential and proprietary information for any business or competitive purposes.

**B.    Foreign Corrupt Practices Act and Internal Revenue Code**

Cloninger and his attorney, Matthew Carter - by executing this Settlement Agreement and Mutual Release - ("Carter"), agree that should either of them become aware of any fact(s) indicating that Gryphon may have violated the Foreign Corrupt Practices Act (15 USC 78dd-1, et seq.) or any provision of the Internal Revenue Code (26 USC 1, et seq.), they will, within ten business days, provide Gryphon with an affidavit setting forth all supporting facts, including the identity and date of each allegedly improper act, the names of all witnesses, and the identity of each supporting document. The affidavit shall be delivered to Roll at his address then registered with the State Bar of California.

Further, no sooner than ten business days or more than 15 business days after providing the aforementioned affidavit to Gryphon/Roll, Cloninger shall file a copy of the affidavit in the aforementioned Colorado case, along with a request that the Court reopen the case pursuant to

SETTLEMENT AGREEMENT AND MUTUAL RELEASE                                    Page 3 of 12

the terms of the attached Settlement Agreement and Mutual Release and the attached Stipulated

Order of Dismissal, in order to hear any and all claims asserting or concerning any violation of

the Foreign Corrupt Practices Act and/or the Internal Revenue Code.

Notwithstanding the foregoing, Cloninger and Carter shall execute the Declarations

attached hereto as Exhibit A and Exhibit B, respectively.

### C.   Gryphon's Obligations To Cloninger

If Gryphon receives an inquiry as to any aspect of Cloninger's tenure at Gryphon,

Gryphon agrees to, regardless of the subject of the inquiry, disclose only the fact of Cloninger's

employment with Gryphon and the dates of such employment.

Gryphon will immediately return all of Cloninger's personal property that is in

Gryphon's possession, custody, or control, and will return to Cloninger any and all of

Cloninger's personal electronic data and destroy any copies.

Gryphon will pay to Cloninger the sum of $3,900.00 (thirty-nine hundred dollars),

representing three months reimbursement to Cloninger for health insurance premiums, no later

than 10 business days after the full execution of this Settlement Agreement and Mutual Release.

### D.   Costs And Attorneys' Fees

The parties will each bear their own costs and attorneys' fees with respect to all lawsuits

and arbitrations that have occurred between them to date.

### E.   Confidentiality

To the extent GR or Cloninger wish to disclose any documents filed in or prepared for

the aforementioned American Arbitration Association proceedings to third parties, GR and/or

Cloninger, as the case may be, shall, through counsel, advise counsel for the non-disclosing

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**                          **Page 4 of 12**

party, by telefax no later than five business days prior to the time set for disclosure, the fact that

such disclosure is to take place, the date, time and location where the disclosure is to take place

and the name and address of any person who is to receive the disclosure.

### 2. GENERAL RELEASE BY GR

A.    Except as may be otherwise expressly stated herein, GR hereby releases

and forever discharges the "Cloninger Releasees" hereunder, consisting of Cloninger and his

attorneys, from any and all manner of action or actions, cause or causes of action, in law or in

equity, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages,

loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent

(hereinafter called "Claims"), including but not limited to all Claims based upon contract, tort or

statute; including but not limited to all Claims, counter-claims, complaints, cross-claims, and/or

cross-complaints asserted or that could have been asserted by GR in the Actions. This paragraph

2A, however, shall not apply to the extent GR accrues a claim for indemnity against Cloninger

by virtue of any person or entity seeking to impose liability against Gryphon resulting from the

gross negligence of or intentional tort (including but not limited to fraud) committed by

Cloninger.    Additionally, this paragraph 2A shall not apply to the extent GR accrues a claim for

indemnity against Cloninger by virtue of any subordinate United States-based employee of

Gryphon or United States-based independent contractor of Gryphon who reported to Cloninger

seeking to impose liability against Gryphon resulting from the actions or inactions of Cloninger.

B.    GR represents and warrants that there has been no assignment or other

transfer of any interest in any Claim which it may have against the Cloninger Releasees, or any

of them.

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**                          Page 5 of 12

C.    GR agrees that if it or any of its past or present members, employees or affiliates hereafter commence, join in, or in any manner seek relief through any suit arising out of, based upon, or relating to any of the Claims released hereunder, or in any manner assert against the Cloninger Releasees, or any of them, any of the Claims released hereunder, then Gryphon and/or RTG, as the case may be, shall pay to the Cloninger Releasees, and each of them, in addition to any other damages caused to the Cloninger Releasees thereby, all attorneys' fees incurred by the Cloninger Releasees in defending or otherwise responding to said suit or claim. This paragraph 2C, however, shall not apply should GR seek any type of relief against the Cloninger Releasees, or any of them, resulting from the gross negligence of or intentional tort (including but not limited to fraud) committed by Cloninger that is not released under paragraph 2A hereof. Additionally, this paragraph 2C shall not apply should GR seek any type of relief against the Cloninger Releasees, or any of them, related to the assertion of liability against GR by any subordinate United States-based employee of Gryphon or United States-based independent contractor of Gryphon who reported to Cloninger seeking to impose liability against Gryphon resulting from the actions or inactions of Cloninger.

3.    **GENERAL RELEASE BY CLONINGER**

A.    Except as may otherwise be expressly stated herein, Cloninger hereby releases and forever discharges the "Gryphon Releasees" hereunder, consisting of GR, and as applicable, its associates; owners; stockholders; affiliates; divisions; subsidiaries; predecessors; successors; agents; directors; members; officers; partners; employees; insurers; representatives; lawyers; heirs; assigns; executors; administrators and all persons acting by, through, under or in concert with them, or any of them, of and from any and all manner of action or actions, cause or

SETTLEMENT AGREEMENT AND MUTUAL RELEASE                                         Page 6 of 12

causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, loss, cost or expense, of any nature whatsoever, known or unknown, fixed or contingent (hereinafter called "Claims"), which Cloninger now has or may hereafter have against the GR Releasees, or any of them, by reason of any matter, cause, or thing whatsoever from the beginning of time to the effective date hereof, including, without limiting the generality of the foregoing, all Claims based upon contract, tort or statute; including but not limited to all Claims, counter-claims, complaints, cross-claims, and/or cross-complaints asserted or that could have been asserted by Cloninger in the Actions.

      **B.**     Cloninger represents and warrants that there has been no assignment or other transfer of any interest in any Claim which he may have against the GR Releasees, or any of them.

      **C.**     Cloninger agrees that if he hereafter commences, joins in, or in any manner seeks relief through any suit arising out of, based upon, or relating to any of the Claims released hereunder, or in any manner asserts against the GR Releasees, or any of them, any of the Claims released hereunder, then Cloninger shall pay to the GR Releasees, and each of them, in addition to any other damages caused to the GR Releasees thereby, all attorneys' fees incurred by the GR Releasees in defending or otherwise responding to said suit or claim.

**4.**     **NO ADMISSION OF LIABILITY**

     The parties hereto understand and agree that this Settlement Agreement and Mutual Release shall not be considered as an admission of liability or constitute evidence of any admission by any party hereto.

//

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**               Page 7 of 12

5.    **ENFORCEABILITY**

This Settlement Agreement and Mutual Release shall not be subject to attack on the ground that any or all of the legal theories or factual assumptions used for negotiating purposes are for any reason inaccurate or inappropriate.

6.    **ENFORCEMENT OF AGREEMENT**

In the event of any litigation or arbitration arising out of this Settlement Agreement and Mutual Release to enforce or interpret the terms of this Settlement Agreement and Mutual Release, or resulting from its breach, the prevailing party or parties shall be entitled to recover reasonable attorney's fees and costs of suit from the non-prevailing party or parties.

7.    **CONSTRUCTION OF AGREEMENT**

The language of this Settlement Agreement and Mutual Release shall not be construed for or against any particular party. The headings used herein are for reference only and shall not affect the construction of this Settlement Agreement and Mutual Release.

8.    **ENTIRE AGREEMENT**

Except as is expressly provided for otherwise herein, this Settlement Agreement and Mutual Release represents the sole and entire agreement between the parties and supersedes all prior agreements, negotiations and discussions between the parties hereto and/or their respective counsel with respect to the subject matters covered hereby. No representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting this Settlement Agreement and Mutual Release shall be deemed to exist or bind any of the parties hereto, except as is expressly provided for otherwise herein. The parties acknowledge that they

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**                                      Page 8 of 12

have not executed this Settlement Agreement and Mutual Release in reliance on any such promise, representation or warranty.

### 9. AMENDMENT TO AGREEMENT

Any amendment to this Settlement Agreement and Mutual Release must be in a writing signed by duly authorized representatives of the parties hereto and stating the intent of the parties to amend this Settlement Agreement and Mutual Release.

### 10. VOLUNTARY EXECUTION

This Settlement Agreement and Mutual Release has been entered into as a result of arms-length negotiations, and the parties all represent that they are voluntarily signing the Settlement Agreement and Mutual Release after an adequate opportunity to consult with counsel regarding its meaning and effect.

### 11. EXECUTION IN COUNTERPARTS

This Settlement Agreement and Mutual Release may be executed in counterparts with the same force and effectiveness as if it were executed in one complete document.

### 12. GOVERNING LAW

This Settlement Agreement and Mutual Release shall be governed by the laws of the State of Colorado and any action arising out of this Settlement Agreement and Mutual Release shall be adjudicated in the United States District Court for the District of Colorado, City of Denver, State of Colorado.

//

//

//

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**                          Page 9 of 12

### 13.   SEVERABILITY

In the event that any part of this Settlement Agreement and Mutual Release is found or declared to be unenforceable, the balance of this Settlement Agreement and Mutual Release shall remain in full force and effect.

### 14.   AUTHORITY

The signatories warrant and represent that they are properly empowered to enter into this Settlement Agreement and Mutual Release on behalf of Gryphon, RTG and Cloninger, respectively.

### 15.   RELIANCE

The parties hereto understand and agree that each has relied and relies wholly upon its own judgment, belief and knowledge of the extent, effect and duration of any damages or liability that may exist between the parties; and this Settlement Agreement and Mutual Release is made without reliance upon any statement or representation of any other signatory. The parties understand the significance and consequences of the terms set forth in this Settlement Agreement and Mutual Release and hereby assume full responsibility for all damages, losses or liabilities

//

//

//

//

//

//

//

SETTLEMENT AGREEMENT AND MUTUAL RELEASE                    Page 10 of 12

hereafter arising out of the subject matter of the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement

Agreement and Mutual Release on the dates indicated below, effective as of the date first

appearing herein.

GRYPHON HOLDINGS LLC dba
GRYPHON AIRLINES

By _Earl D Gibbs_

Name _EArl D. Gibbs_

Title _President / CEO_

Date _26 June 2009_

F. MAXEY CLONINGER, III

Date _26 5un 2009_

RIVERS TRANSPORTATION GROUP, LLC
Gryphon Holdings , LLC , successor

By _Earl D Gibbs_

Name _Earl D. Gibbs_

Title _President / CEO_

Date _26 June 2009_

APPROVED AS TO FORM:

SPECTOR & BENNETT
A Professional Corporation

WARGEN, SMITH & HARRIS,
PLC

By _____
Rod A. Spector, Esq.
Attorneys for
GRIFFON HOLDINGS LLC dba
GRIFFON AIRLINES and
RIVERS TRANSPORTATION
GROUP, LLC

By _____
Matthew C. Cook, Esq.
Attorneys for
F. MARKY CLONINGER, III.

**EXHIBIT A**

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

Civil Case No. 09-CV-00588-JLK-CBS

GRYPHON HOLDINGS, LLC dba
GRYPHON AIRLINES,

      Plaintiff,

vs.

F. MAXEY CLONINGER, III,

      Defendant.

---

**DECLARATION OF F. MAXEY CLONINGER, III RE: SETTLEMENT AGREEMENT
AND MUTUAL RELEASE (EXHIBIT A TO SETTLEMENT AGREEMENT AND
MUTUAL RELEASE)**

---

      I, F. Maxey Cloninger, III, declare as follows:

      1.    I was an employee of Gryphon Holdings, LLC ("Gryphon") from March 1, 2008

through March 16, 2009.

      2.    Gryphon and I, prior to the within settlement, were engaged in disputes asserted

in case number 002-QB6-SCW of the American Arbitration Association, case number 09-CV-

00588-JLK-CBS of the United States District Court for the District of Colorado and case number

09-2037 of the United States District Court for the Western District of Arkansas (collectively the

"Actions"). These disputes concerned several issues, including, but not limited to, whether I was

1

entitled to an ownership interest in Rivers Transportation Group, LLC ("RTG") - which I have been informed has merged with Gryphon - and/or Gryphon.

3.      Prior to the commencement of the Actions, I expressed concern to Thomas Roll ("Roll"), Gryphon's General Counsel, that Gryphon, RTG and persons affiliated with Gryphon and RTG may have committed violations of the Foreign Corrupt Practices Act and/or the Internal Revenue Code (the "Allegations").

4.      At and after the time the Allegations were made, Roll requested that he be provided with information and documentation supporting the Allegations. I was unable to comply with Roll's request.

5.      Shortly after the Allegations were made, I consulted with Matthew Carter ("Carter"), an attorney duly licensed to practice law in the State of Arkansas, with regard to the Allegations and subsequently I concluded that there was no legal basis to support the Allegations.

6.      To the extent I ascertain in the future that Gryphon, RTG and/or any persons affiliated with Gryphon and/or RTG may have committed violations of the Foreign Corrupt Practices Act and/or the Internal Revenue Code (the "Future Allegations"), I shall, within ten business days, provide Gryphon with a sworn, notarized affidavit delineating any and all details of the Future Allegations, including, but not limited to, the identification of any and all participants, witnesses and documents supporting the Future Allegations and the dates any and all Future Allegations took place. The affidavit shall be delivered to Roll at his address then registered with the State Bar of California.

Further, no sooner than ten business days or more than 15 business days after providing

the aforementioned affidavit to Gryphon/Roll, I shall file a copy of the affidavit in the aforementioned Colorado case, along with a request that the court reopen the case pursuant to the terms of the attached Settlement Agreement and Mutual Release and the attached Stipulated Order of Dismissal, in order to hear any and all claims asserting or concerning any violation of the Foreign Corrupt Practices Act and/or the Internal Revenue Code.

7.    I have carefully reviewed the within information and have executed this Declaration, freely and voluntarily, without duress, after consulting with Carter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _26_ day of June, 2009 at Ft. Smith, Arkansas.

F. Maxey Cloninger

Declaration of F. Maxey Cloninger  -  Exhibit A

3

**EXHIBIT B**

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

Civil Case No. 09-CV-00588-JLK-CBS

GRYPHON HOLDINGS, LLC dba
GRYPHON AIRLINES,

      Plaintiff,

vs.

F. MAXEY CLONINGER, III,

      Defendant.

## DECLARATION OF MATTHEW CARTER RE: SETTLEMENT AGREEMENT AND MUTUAL RELEASE (EXHIBIT B TO SETTLEMENT AGREEMENT AND MUTUAL RELEASE)

I, Matthew Carter, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of Arkansas and am counsel to F. Maxey Cloninger, III in case number 002-QB6-SCW of the American Arbitration Association, case number 09-CV-00588-JLK-CBS of the United States District Court for the District of Colorado and case number 09-2037 of the United States District Court for the Western District of Arkansas (collectively the "Actions").

2.     These disputes concerned several issues, including, but not limited to, whether Cloninger was entitled to an ownership interest in Rivers Transportation Group, LLC ("RTG") -

1

which I have been informed has merged with Gryphon - and/or Gryphon.

3.     Prior to the commencement of the Actions, Cloninger informed me that he had expressed concern to Thomas Roll ("Roll"), Gryphon's General Counsel, that Gryphon, RTG and persons affiliated with Gryphon and RTG may have committed violations of the Foreign Corrupt Practices Act and/or the Internal Revenue Code (the "Allegations").

4.     Based on the information provided to me by Cloninger, the information shared did not provide a legal basis to support the Allegations.

5.     To the extent I ascertain in the future that Gryphon, RTG and/or any persons affiliated with Gryphon and RTG may have committed violations of the Foreign Corrupt Practices Act and/or the Internal Revenue Code (the "Future Allegations"), I shall, within ten business days, provide Gryphon with a sworn, notarized affidavit delineating any and all details of the Future Allegation, including, but not limited to, the identification of any and all participants, witnesses and documents supporting the Future Allegation and the dates any and all Future Allegation took place. The affidavit shall be delivered to Roll at his address then registered with the State Bar of California.

Further, no sooner than ten business days or more than 15 business days after providing the aforementioned affidavit to Gryphon/Roll, I shall file a copy of the affidavit in the aforementioned Colorado case, along with a request that the Court reopen the case pursuant to the terms of the attached Settlement Agreement and Mutual Release and the attached Stipulated Order of Dismissal, in order to hear any and all claims asserting or concerning any violation of the Foreign Corrupt Practices Act and/or the Internal Revenue Code.

6.     I agree to destroy or keep confidential any and all documentation and information

Declaration of Matthew Carter -   Exhibit B              2

I or any member of my law firm has concerning the Actions, releasing it only upon the Order of the aforementioned Colorado Court after noticed motion.

     7.    I have carefully reviewed the within information and have executed this Declaration freely and voluntarily.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _26th_ day of June, 2009 at Rogers, Arkansas.

Matthew Carter

Declaration of Matthew Carter - Exhibit B                        3